UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present         Not Present

**Proceedings:**    (IN CHAMBERS) - DEFENDANT SEMICONDUCTOR MANUFACTURING SOUTH CHINA CORPORATION'S MOTION TO DISMISS (Dkt. 43, filed on November 8, 2024)

DEFENDANT SEMICONDUCTOR MANUFACTURING INTERNATIONAL CORPORATION'S MOTION TO DISMISS (Dkt. 44, filed on November 8, 2024)

## I.   INTRODUCTION

On October 23, 2023, plaintiff High Sharp Electronic Limited ("High Sharp" or "plaintiff") filed this action against the following defendants: Semiconductor Manufacturing South China Corporation ("SMSC"); Semiconductor Manufacturing International Co. ("SMIC"); Xing Wang ("Wang"); Ling Mong Song ("Mong Song"); Zhao Haijun ("Haijun"); and Does 1-100. Dkt. 1 ("Compl."). Plaintiff asserts eight claims for relief: (1) fraud; (2) conversion; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) intentional interference with prospective economic advantage; (6) negligent interference with prospective economic advantage; (7) *quantum meruit* – unjust enrichment; and (8) unfair competition in violation of Cal. Bus. & Prof. Code § 17200. Id.

On November 8, 2024, defendant SMSC made a special appearance and filed a motion to dismiss plaintiff's complaint. Dkt. 43 ("SMSC Mot."). On the same day, defendant SMIC also filed a motion to dismiss plaintiff's complaint. Dkt. 44 ("SMIC Mot."). SMSC and SMIC concurrently filed a joint request for judicial notice. Dkt. 45

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

("RJN"). On January 17, 2025, plaintiff filed oppositions to both motions. Dkt. 54 ("SMSC Opp."), dkt. 55 ("SMIC Opp."). On February 17, 2025, SMSC filed its reply. Dkt. 56 ("SMSC Reply"). On the same day, SMIC filed its reply. Dkt. 57 ("SMIC Reply").

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7–15. SMSC's and SMIC's motions to dismiss are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   The Parties

Plaintiff alleges that it is a Texas corporation that does "substantial amounts of business in Los Angeles, California." Compl. ¶ 4. Plaintiff asserts that its CEO and other representatives reside in California. Id. Plaintiff allegedly entered into the contract at issue and was harmed in California. Id.

Plaintiff alleges that defendant SMSC is a People's Republic of China corporation based in Shanghai. Id. ¶ 5. Plaintiff further alleges that SMSC is a subsidiary of defendant SMIC, which is incorporated in the Cayman Islands and is also a state-owned enterprise of the People's Republic of China. Id. SMSC and SMIC (the "corporate defendants") were allegedly valued at approximately $36.1 billion in 2021. Id. Plaintiff asserts that SMSC and SMIC regularly do business in California, where they maintain offices, have employees, and introduce products into the stream of commerce. Id.

Plaintiff alleges that defendants Mong Song and Haijun are officers, directors, and/or controlling shareholders of SMSC and SMIC, who were personally responsible for overseeing, directing, and/or ratifying the conduct of the corporate defendants. Id. ¶ 6.

Plaintiff alleges that defendant Wang is a sales broker who acted on behalf of the corporate defendants with their express approval, direction, and ratification. Id. ¶ 7.

Plaintiff alleges that "Doe 1" is a company that is affiliated with defendants, conspired in their fraud, and received the "partial refund" that should have been sent to plaintiff. Id. ¶ 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

### B.    The Allegations

Plaintiff alleges that, in 2021, Bitcoin and other cryptocurrencies peaked in value. Id. ¶¶ 24, 25. At this time, plaintiff alleges that it intended to obtain valuable computer chips called "wafers" to be used in the manufacture of specialized computers known as cryptocurrency "miners," to capitalize on the rapidly growing market. Id. ¶ 1. Plaintiff asserts that defendants supplied wafers and had "tremendous bargaining power," due to low levels of supply from the global microchip shortage and record demand. Id. ¶ 31.

Plaintiff alleges that on or about November 15, 2021 through December 7, 2021, the corporate defendants, by and through their broker and authorized representative, defendant Wang, falsely represented to plaintiff that they were willing and able to provide 1,728 silicon wafers for plaintiff to use in the manufacture of cryptocurrency miners. Id. ¶ 35. Plaintiff allegedly entered into an agreement with the corporate defendants, on or around November 15, 2021, requiring plaintiff to wire cash funds of $19,080,000, in full, as a prepayment for 1,728 wafers, at a price of $11,000 each. Id. ¶¶ 35, 61. Plaintiff asserts that it was an oral, written, and implied agreement, but the written terms "are not currently available to plaintiff." Id. ¶ 60. Plaintiff asserts that it complied with the terms by wiring the funds from a Chase Bank account in the United States on December 7, 2021, to defendants' account at the Bank of China Limited in Shanghai, China. Id. ¶ 62.

Plaintiff asserts that defendants' statements were false and intended to induce detrimental reliance, because defendants did not have the wafers, and instead intended to use plaintiff's funds to manufacture or procure them. Id. ¶ 36. Further, plaintiff alleges that at the time of the agreement, defendants planned to resell the promised wafers to plaintiff's competitor, at a higher price, during the global microchip shortage. Id. ¶ 37.

Plaintiff alleges that through their broker, defendant Wang, the corporate defendants explicitly referred to approvals from defendants Mong Song and Haijun to complete the fraudulent transaction, as they ratified and/or directed it. Id. ¶ 38. Plaintiff further alleges that through defendant Wang, the corporate defendants reassured plaintiff that "there was nothing to fear in making a full prepayment," because the corporate defendants could and would deliver the wafers without delay. Id. ¶ 39. Plaintiff therefore asserts that it was intentionally tricked into wiring more than $19,080,000 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

defendants. Id. ¶ 41. Thereafter, plaintiff alleges that instead of shipping the pre-paid wafers, defendant sold them to plaintiff's competitor for a higher price. Id. ¶ 42.

By June 2022, plaintiff asserts that the cryptocurrency market had crashed, and defendants still had not delivered the pre-paid wafers to plaintiff. Id. ¶ 43. Plaintiff alleges that it was unable to obtain the wafers in a timely manner, missed the opportunity to sell miners at an "opportune" time, and lost more than 40% of the value of the miners it later managed to sell. Id. According to plaintiff, it demanded a refund in June 2022, which defendants represented they would issue in 2023. Id. ¶ 45. Plaintiff asserts that this representation was false, as defendants intended to hide this transaction. Id. Plaintiff alleges that it relied on defendants' promise of a full refund in 2023 and therefore did not take further immediate action. Id. ¶ 47. Subsequently, however, plaintiff asserts that it discovered that defendants had no intention to follow through with the refund. Id. According to plaintiff, defendants instead wired approximately $2 million, deemed a "partial refund," to a third-party company with no connection to plaintiff, referred to as "Doe 1." Id. ¶ 48. Plaintiff asserts that it never recovered these funds. Id. ¶ 49. Plaintiff alleges that defendant stated that the $2 million wire transfer to Doe 1 was completed to evade detection by the Foreign Currency Bureau of the People's Republic of China. Id. According to plaintiff, defendants asked it to alter and falsify its balance sheet to corroborate defendants' lies to the Chinese government, but plaintiff refused. Id. ¶ 50.

Plaintiff alleges that defendants were aware of plaintiff's relationships with its customers and plaintiff's promises to deliver miners to its customers. Id. ¶ 74. Plaintiff therefore asserts that defendants knowingly, recklessly, and intentionally disrupted its relationships with its customers. Id. ¶ 76. Plaintiff alleges that its business relationships were disrupted when its customers threatened to sue plaintiff for failing to timely deliver the miners, and that as a result, plaintiff has lost profits and prospective profits. Id. ¶ 77.

**C.    Jurisdictional Facts**

In a declaration, plaintiff's CEO, Xue Han ("Han"), asserts that plaintiff conducts its business in California, as he works in California, along with most of the other agents, employees, and representatives of High Sharp. Dkt. 54-1 ¶ 3. Han further asserts that he was in California when High Sharp, at his direction, entered into the contract at issue, and that the contract at issue was to be performed by defendants, including SMSC and SMIC,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

in California. Id. ¶¶ 3, 4. Han states that in connection with the contract, SMIC directed plaintiff to make the $19,080,000 payment to SMSC, its subsidiary. Id. ¶¶ 5-6. Han provides a copy of the purchase order showing that funds were sent to "Account Name: Semiconductor Manufacturing South China Corporation." Dkt. 54-1, Ex. A. Further, Han provides that SMIC holds itself out as doing business in California and advertises a California address as its United States location, and that SMIC and SMSC have the same address in China, citing their websites. Dkt. 54-1 ¶ 6.

According to plaintiff, public filings by defendants "make it clear that SMSC[] is a major subsidiary that is controlled by SMIC." Dkt. 54-2 ¶ 6. Plaintiff provides SMIC's 2021 Annual Report, which states that SMSC is "regarded as a subsidiary of the company [SMIC] since SMIC Holdings is entitled to appoint the majority of the directors in SMSC's board of directors and those directors can veto certain material matters discussed in the board meeting of SMSC at its sole discretion." Id. Plaintiff further states that in 2021, SMIC held 38.52% of SMSC's shares, while it enjoyed 57.14% of the voting rights of SMSC's board of directors. Id. Plaintiff also points to SMSC's "various complex and intertwined agreements" with SMIC, which include a "provision of guarantee by [SMIC] and/or its subsidiaries… for SMSC's financing activities." Id. ¶ 7. Plaintiff states that SMIC's 2023 Annual Report states that it has "professional customer service teams in… California (USA)." Id. ¶ 8. Plaintiff also provides a 2018 letter from SMIC's board of directors, which states that SMIC is "responsible for managing the daily operations" of SMSC, notwithstanding capital investments from its partners. Id. ¶ 9. Finally, plaintiff attaches a news article from *Asia Financial* in which SMSC is referred to as SMIC's "wholly-owned subsidiary," largely funded by SMIC. Id. ¶ 10.

On the other hand, SMSC provides a declaration from its general manager, Hsin Fa Lin ("Lin"), asserting that is has no office, property, or presence in the United States or California, nor does it operate from or have employees, agents, or clients in the Untied States or California. Dkt. 43-1 ¶ 4. Further, Lin states that SMSC is not registered to do business in California, has never done business in California, has never been affiliated with defendant Wang, and never authorized him to conduct business on SMSC's behalf. Id. ¶¶ 5-6. Next, Lin asserts that the complaint "incorrectly identifies SMSC as a subsidiary of [SMIC]. SMIC is not a wholly owned subsidiary of SMIC. Rather, SMIC is an indirect minority shareholder in SMSC through an entity called SMIC Holdings Co., Ltd." Id. ¶ 8. Lin states that SMIC Holdings Co., Ltd. owns approximately 38% of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

SMSC, with the remaining 62% of the interests distributed through five investment funds that are otherwise unaffiliated with SMSC or SMIC. Id. Lin also asserts that SMIC Holdings Co., Ltd. has no contacts or operations with the United States or California. Id. Additionally, Lin states that the San Jose address at which plaintiff attempted to serve SMIC is not affiliated with SMSC, but belongs instead to SMIC, Americas ("SMIC USA"). Id. ¶¶ 10-11. Lin asserts that SMIC USA is not an agent, subsidiary, parent, or shareholder of SMSC and does not conduct any business on SMSC's behalf. Id. ¶ 11. Finally, Lin states that the Palo Alto address at which plaintiff attempted to serve SMSC is not associated with SMSC, and that no one located at the address is authorized to accept service on SMSC's behalf. Id. ¶ 14.

SMIC provides a declaration from its chairman, Xunfeng Liu ("Liu"), stating that SMIC has no presence, operations, employees, agents, or clients in California. Dkt. 46 ¶ 4. Further, Liu states that SMIC is not registered to do business in California and does not regularly conduct its own business in California. Id. ¶¶ 6-7. Liu asserts that SMIC's wholly owned subsidiary, SMIC USA, located at the San Jose address, does not conduct business on behalf of SMIC. Id. ¶ 9. Finally, Liu asserts that defendant Wang has never been affiliated with SMIC or authorized to conduct business on its behalf. Id. ¶ 10.

## III.   LEGAL STANDARD

### A.   Service of Process

Federal Rule of Civil Procedure 4(h) governs service of process on foreign corporations. It provides:

(h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h). Federal Rule of Civil Procedure 4(e)(1) provides:

(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e). Federal Rule of Civil Procedure 4(f) states, in pertinent part, that an individual in a foreign country can be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," or by other methods if there is no internationally agreed means of service. Fed. R. Civ. P. 4(f).

### A.    Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|----------|------------------------|------|-------------------|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

## IV.  DISCUSSION

SMSC argues that plaintiff's complaint must be dismissed because (1) plaintiff has not properly served SMSC; and (2) the Court lacks personal jurisdiction over it. SMSC Mot. at 1. SMIC likewise moves to dismiss, arguing that (1) the Court lacks personal jurisdiction over it; and (2) plaintiff fails to state a claim under Rule 12(b)(6).[1] SMIC Mot. at 1. If SMSC's motion is denied, it joins in SMIC's Rule 12(b)(6) arguments. SMSC Mot. at 1, n.1. The Court addresses defendants' service of process, personal jurisdiction, and Rule 12(b)(6) arguments in turn.

### A.  Service of Process

SMSC argues that dismissal is warranted under Rule 12(b)(5) because plaintiff failed to properly serve SMSC. SMSC Mot. at 12. SMSC asserts that plaintiff has attempted to serve SMIC, but not SMSC, on two occasions in the United States, first at a San Jose address and then at a Palo Alto address. Id. at 13. While plaintiff states that it "believes it has validly served both SMIC and SMSC," SMSC contends that neither of these attempts effectively served SMSC. Id. While Rule 4 permits service according to California law, SMSC argues that plaintiff failed to serve its "general manager" in the state, as required by California law. Id. at 14. SMSC contends that "at most," plaintiff served SMIC USA, because SMIC USA is based at the San Jose address where service was attempted. Id. SMSC argues that it is not a parent or stockholder of SMIC USA, which is a wholly owned subsidiary of SMIC. Id. While California law allows a foreign corporation to be served through a domestic subsidiary, SMSC contends that SMIC USA is not its subsidiary. Id. Even if SMIC USA was SMSC's subsidiary, SMSC argues that plaintiff would need to provide evidence of a sufficiently close connection between the two entities, which it has not done. Id. at 15. As for the attempted service at the Palo Alto address, SMSC again argues that plaintiff only attempted service on SMIC, not SMSC. Id. Regardless, SMSC contends that the Palo Alto address is not associated with SMSC or an affiliate, but is rather the address for the law firm Wilson Sonsini. Id.

Separately, SMSC argues that plaintiff has not even attempted to effectuate international service on SMSC through the Hague Convention, as permitted by Rule 4(f). Id. at 16. SMSC asserts that plaintiff's failure to do so "has nothing to do with the

---

[1] SMIC, unlike SMSC, waived service of process in this action. Dkt. 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

requirements of China's Central Authority," but is rather related to plaintiff's failure to obtain a proper summons, as plaintiff received at least six notices of deficiencies regarding its summons. Id. at 17. SMSC also disputes any argument that plaintiff instructed its agent, ABC Legal Services ("ABC"), to attempt service on SMSC in China, because ABC's director only received documents to serve the individual defendants in this case, not SMSC or SMIC. Id. SMSC asserts that plaintiff only obtained a summons for SMSC after the Court issued an order to show cause. Id. at 18.

In opposition, plaintiff argues that SMSC was properly served in San Jose, California. SMSC Opp. at 12. Plaintiff contends that California law allows service on a foreign corporation by serving its domestic subsidiary as "general manager" of the foreign corporation, if the domestic subsidiary had a sufficiently close connection with the parent. Id. Plaintiff asserts that SMSC received actual notice of the lawsuit, as it hired the same attorneys as SMIC and joined in its brief. Id. at 13. Further, plaintiff argues that the two entities are closely intertwined, as SMIC controls 57% of SMSC's board of directors, each with veto power, and SMIC has full operational control of SMSC. Id. In the transaction at issue, plaintiff asserts that SMSC benefitted from SMIC's presence in California because it received more than $19 million. Id.

In reply, SMSC argues that even if plaintiff was not required to comply with the Hague Convention, plaintiff failed to validly serve SMSC in the United States. Reply at 11. SMSC also asserts that plaintiff's attempt to serve two distinct entities with a single summons is improper and requires dismissal. Id. Additionally, SMSC argues that none of the service documents purport to have served SMSC, and the San Jose address belongs to SMIC USA, not SMIC or SMSC. Id. SMSC contends that in order for service to be effective, SMIC USA—not SMIC—would have to be the general manager of SMSC. Id. Further, SMSC asserts that SMIC USA would have to be a domestic subsidiary of SMSC, which it is not, and plaintiff would need to prove that SMSC and SMIC USA have a sufficiently close connection. Id. at 12. Lastly, SMSC argues that plaintiff fails to show that SMSC was not otherwise available for service, which is the second requirement for service through a subsidiary. Id. SMSC asserts that it is available for service through the Hague Convention. Id.

It appears to the Court that plaintiff attempted to serve SMSC through Rule 4(h)(1)(A), which allows foreign corporations to be served in a judicial district of the United States in certain manners prescribed for serving individuals, and Rule 4(e)(1),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

which allows an individual to be served in the United States following state law in the state where the district is located. See Fed. R. Civ. P. 4. The Court therefore looks to California law to determine if plaintiff's attempted service on SMSC was proper. California law permits service upon a corporation by delivering a copy of the summons and the complaint to "a general manager" of the corporation. CCCP § 416.10(b). A related statute permits service of process upon a foreign corporation transacting business in California by serving "its general manager in this state." CCC § 2110.

However, "[t]he term 'general manager' is not defined in either statute." U.S. ex rel. Miller v. Pub. Warehousing Co. KSC, 636 F. App'x 947, 948 (9th Cir. 2016). In Miller, the Ninth Circuit noted a split of authority in California courts, with one line of cases, most recently Yamaha Motor Co. v. Superior Ct., 174 Cal. App. 4th 264, 271 (2009), stating that service on a foreign corporation through its domestic subsidiary satisfied the relevant statutory requirements for service. Id. at 948-49. Another line of cases, however, found that such attempts at service were impermissible. Id. In the former line of cases, where service on a domestic subsidiary was valid, Miller identified two requirements: (1) the parent corporation was foreign and not readily available for service within California; and (2) to be deemed a "general manager," the subsidiary had a sufficiently close connection with the parent, examined through the "frequency and quality of contact between the parent and the subsidiary, the benefits in California that the parent derives from the subsidiary, and the overall likelihood that service upon the subsidiary will provide actual notice to the parent." Id. at 949.

Here, plaintiff argues that SMSC is a subsidiary of SMIC (or, apparently, SMIC USA, given plaintiff's contention that all three entities are "one and the same"), and that SMSC has a sufficiently close connection with SMIC and SMIC USA to enable service on SMSC through service of SMIC USA. Opp. at 12-13. Specifically, plaintiff asserts that SMSC has notice of this lawsuit, that SMIC has "full operational control" of SMSC through its directors' veto power on the board, and that SMSC benefitted from SMIC's presence in California because SMSC was paid more than $19 million through the transaction at issue. Id. at 13. SMSC disputes these arguments, asserting that SMSC is not a wholly owned subsidiary of SMIC. Dkt. 43-1 ¶ 8. Rather, SMSC contends that SMIC is an indirect minority shareholder in SMSC, owning approximately 38% of SMSC through an entity called SMIC Holdings, Co. Ltd. Id. SMSC further contends

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

that SMIC USA is not an agent, parent, or shareholder of SMSC and does not conduct any business on SMSC's behalf. Id. ¶ 11.

The Court finds that plaintiff has not met its burden under Miller to show the requisite foreign corporation-domestic subsidiary relationship between SMSC, SMIC USA, and/or SMIC, or a sufficiently close connection between these three entities. Plaintiff therefore has not demonstrated that SMIC USA is the "general manager" of SMSC, and as a result, plaintiff's service did not comply with CCCP § 416.10(b) or CCC § 2110. The Court distinguishes the instant case from Yamaha, where the California Court of Appeal found that it was "undisputed" that Yamaha-America was Yamaha-Japan's wholly owned domestic subsidiary in the United States, and that Yamaha-America acted as Yamaha-Japan's exclusive importer and distributor, provided its warranty and owner manuals, conducted its testing and marketing, and received complaints on its behalf. Yamaha, 174 Cal. App. 4th at 268. Here, by contrast, the facts about the relationship between SMSC, SMIC, and SMIC USA are in dispute, as SMSC contends that (i) SMIC USA is not a subsidiary of SMSC and SMSC is not a subsidiary of SMIC USA; and (ii) that neither entity conducts any business on each other's behalf. Dkt. 43-1 ¶ 11. See also Jones v. James Trading Co. Ltd., No. CV 19-2674-MWF-JEMx, 2019 WL 6354392, at *5 (C.D. Cal. July 3, 2019) ("Here, unlike the plaintiff in Yamaha, Plaintiff has not met her burden to show that Every Industry was a subsidiary of James Trading or that their relationship are so 'intimate,' 'connected,' and 'interrelated.'"). Accordingly, the Court finds that plaintiff's service of process on SMSC was insufficient.

Separately, the Court acknowledges that the single summons served by plaintiff appears to list two defendants: SMSC and SMIC. See dkt. 38 (stating "Defendant's name" as "SEMICONDUCTOR MANUFACTURING SOUTH CHINA CORPORATION; a People's Republic of China Shanghai corporation and a subsidiary of SEMICONDUCTOR MANUFACTURING INTERNATIONAL CO (SMIC), a Cayman Islands corporation"). Plaintiff requested only a single summons, apparently to serve both corporate defendants. Dkt. 32. The Court finds that a separate summons should have been requested and issued for each defendant, as Rule 4(b) requires that "[a] summons--or a copy of a summons that is addressed to multiple defendants--must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). See Fuentes v. Nat'l Tr. Co. Deutsche Bank, No. 22-CV-04953-BLF, 2023 WL 2278701, at *2 (N.D. Cal. Feb. 27, 2023) (same); Devaney v. Quality Loan Serv. Corp., No. 2:19-CV00972-RFB-EJY,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

2019 WL 7597042, at *2 (D. Nev. Oct. 28, 2019) (same).  Accordingly, the Court finds that plaintiff's process was insufficient.

Having concluded that plaintiff's attempted service was insufficient, the Court grants SMSC's motion to dismiss without prejudice.  See Stevens v. Sec. Pac. Nat. Bank, 538 F.2d 1387, 1389 (9th Cir. 1976) ("The choice between dismissal and quashing service of process is in the district court's discretion.").  The Court does not reach SMSC's arguments about personal jurisdiction.

### B.      Personal Jurisdiction

Having granted SMSC's motion to dismiss because plaintiff failed to serve SMSC, the Court analyzes only SMIC's personal jurisdiction arguments.  SMIC argues that the Court lacks general jurisdiction over it because SMIC, as a Cayman corporation with its principal place of business in Shanghai, is not "at home" in California.  SMIC Mot. at 5. Further, SMIC argues that plaintiff does not contend that SMIC has such "continuous and systematic general business contacts" to approximate a "physical presence" in California, as SMIC does not regularly conduct its own business in the United States or California, and its status with the California Secretary State is "terminated."  Id.  Additionally, SMIC argues that the Court lacks specific jurisdiction over it, as the complaint does not allege any conduct by SMIC or any conduct by SMIC directed at this forum.  Id.  SMIC contends that the allegations are based on defendant Wang's conduct, who has never been affiliated with SMIC or authorized to conduct business on its behalf.  Id. at 5-6.

In opposition, plaintiff argues that SMIC has physical offices and employees in California, through its wholly owned and controlled subsidiary, SMIC USA, which could make it subject to general jurisdiction here.  SMIC Opp. at 7.  Plaintiff argues that SMIC is also subject to specific jurisdiction in this case.  Id.  Plaintiff asserts that SMIC purposefully availed itself of California when it received, accepted, and retained several wire transfers (through SMSC) from a customer in California, and then refused to deliver the wafers or return the funds.  Id. at 8.  Plaintiff contends that Han's declaration shows that he caused wire transfers to be initiated in California, at the direction of SMIC; that the funds were sent to an account owned by SMSC; and that SMIC acknowledged receipt of those funds.  Id.  Plaintiff next asserts that the case arises out of SMIC's contacts with California, because plaintiff's CEO is based in California, contemplated the contract at issue in California, and was misled by defendants in California.  Id. at 9.  Finally,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

plaintiff contends that jurisdiction here comports with notions of fair play and substantial justice. Id. Plaintiff contends that all seven factors for determining reasonableness favor its position: (1) SMIC purposefully interjected itself into California, as it has offices in San Jose and Irvine; (2) there is little burden on SMIC to litigate here, because it does business and has offices here; (3) there are no implications with China's sovereignty; (4) California has a strong interest in adjudicating the dispute and enforcing contracts created here, affecting businesses located here;[2] (5) this Court is an efficient forum, because plaintiff's CEO is located here; (6) the forum has been selected by plaintiff for convenient relief; and (7) there is no reasonable alternative forum, as China's judicial system is significantly different. Id. at 10-12. To the extent that SMIC argues that SMIC USA is distinct from it, plaintiff requests jurisdictional discovery to establish that they are "one and the same." Id. at 11, n.3.

In reply, SMIC argues that the fact that plaintiff's CEO, a nonparty, lives in California is irrelevant, because plaintiff is a Texas corporation with its principal place of business in Texas. SMIC Reply at 2. SMIC further argues that plaintiff's filings show that the purported purchase order at issue lists plaintiff's address in Texas, and plaintiff's banking records show that its "outgoing wire" originated from Houston, Texas, where plaintiff banked. Id. Even if plaintiff itself were a resident of California, SMIC argues that it would not establish jurisdiction, because plaintiff must show that SMIC intentionally targeted its conduct at California—not just at a plaintiff who lives in California, let alone a nonparty. Id. at 3. SMIC reiterates that the complaint fails to allege any conduct by SMIC in California. Id. at 5. SMIC asserts that the allegations of wrongdoing are directed at defendant Wang, who was plaintiff's founder and previous sole owner. Id. According to SMIC, plaintiff now "admits" that Wang did not assign his ownership interest in plaintiff to the current CEO, Han, until January 10, 2022. Id.

As for plaintiff's arguments about SMIC USA, SMIC does not contest that SMIC USA is its wholly owned subsidiary. Id. at 4, n.4. However, SMIC asserts that imputation of SMIC USA's contacts to SMIC would require plaintiff to prove that SMIC USA was its alter ego. Id. at 5. SMIC argues that plaintiff cannot satisfy the first prong

---

[2] While plaintiff refers to its CEO's location in California, its business conducted in California, and its employees based in California, plaintiff does not explicitly argue that it is "at home" in California as the state where its principal place of business is located.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

of the alter ego test, as even shared management and personnel are insufficient to establish the requisite level of control. Id. SMIC then argues that plaintiff does not even attempt to satisfy the second prong. Id. at n.7. SMIC contends that jurisdictional discovery is unwarranted, because plaintiff's argument is attenuated and fails to identify any specific facts that would give rise to personal jurisdiction. Id. at 7, n.8.

On this record, the Court finds that SMIC could be subject to personal jurisdiction in California pursuant to two theories. First, it appears that SMIC USA is subject to general jurisdiction in California as a California corporation. See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'"); dkt. 43-1, Ex. 1 (SMIC USA's statement of information with California's Secretary of State). However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015). In these circumstances, a subsidiary's contacts with a forum state can only be imputed to its foreign parent "upon a showing that the subsidiary is an alter ego of its parent." Id. at 1065.

"The alter ego test is designed to determine whether the parent and subsidiary are not really separate entities, such that one entity's contacts with the forum state can be fairly attributed to the other. The alter ego… relationship is typified by parental control of the subsidiary's internal affairs or daily operations." Id. at 1071 (quotations and citations omitted). To satisfy the test, a plaintiff must make out a prima facie case "1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Id. at 1073. Accordingly, if plaintiff establishes that SMIC USA is SMIC's alter ego, SMIC may be subject to personal jurisdiction based on SMIC USA's sufficient minimum contacts. Plaintiff has alleged that SMIC and SMIC USA are "effectively one and the same," that SMIC USA is "wholly under its control," and that there is no alternative forum to adjudicate this dispute. SMIC Opp. at 11-12. Plaintiff further alleges that SMIC has at least two offices in California, has "intertwined agreements" with its subsidiaries, and represents that it has "professional customer service teams in… California." Dkt. 54-2 ¶¶ 3, 4, 7, 8. SMIC responds that plaintiff has not even attempted to satisfy the alter ego test, "[n]or could it." SMIC Reply at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

Plaintiff's second theory of jurisdiction appears to be based not on SMIC USA's contacts, but on SMIC's purposeful availment in California for the transaction at issue. The Court understands this theory of specific jurisdiction as follows: SMIC contracted with plaintiff, a corporation conducting substantial business in California, with its CEO and other employees based in California, to perform a contract to deliver wafers in California. According to plaintiff, SMIC was represented in the transaction by defendant Wang, who also solicited plaintiff's business in California, where plaintiff entered into the contract and suffered harms. While plaintiff does not provide a written copy of the contract, plaintiff's CEO, Han, asserts in a declaration that "the contract that is the subject of this action was to be performed by the [d]efendants… here in California." Dkt. 54-1 ¶ 3. SMIC, on the other hand, maintains that it is not qualified to do business in California; has no employees, agents, or clients in California; and has never been affiliated with defendant Wang or authorized him to conduct business on SMIC's behalf. Dkt. 46 ¶¶ 4, 5, 10.

The Court finds that, pursuant to both of these theories, discovery is required to further understand the relationship between SMIC and SMIC USA, the transaction at issue, and the role, location, and activities of defendant Wang. "[Jurisdictional] [d]iscovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008). "A plaintiff need only present a 'colorable basis' for jurisdiction in order to obtain discovery, and a court abuses its discretion in denying discovery when it might well demonstrate jurisdictionally relevant facts." Lang v. Morris, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011) (citations and quotations omitted).

The Court finds that plaintiff has alleged at least a "colorable basis" for jurisdiction based on both of these theories. If, for example, plaintiff can make a "more satisfactory showing" of facts demonstrating SMIC's "pervasive control" over SMIC USA such that SMIC USA was its alter ego, the Court may exercise personal jurisdiction over SMIC. Relevant facts would include a failure to observe corporate formalities; to maintain separate directors and officers; or to individually conduct activities like leasing facilities, maintaining accounting books, entering into contracts, and paying taxes. Ranza, 793 F.3d at 1074. Undercapitalization, failure to keep adequate records, and free transfer of one entity's assets by the other are also all "signs of a sham corporate veil." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|---|---|---|---|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

Alternatively, if plaintiff can provide evidence of defendant Wang's role, SMIC's alleged direction and ratification of Wang's activities, Wang's alleged solicitation of plaintiff in California, Wang's location during the alleged solicitation and negotiations, and the alleged terms of the contract requiring performance by SMIC in California—all "pertinent" facts that appear "controverted"—SMIC may be subject to specific jurisdiction here. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing… in determining whether the defendant purposefully established minimum contacts within the forum.").

> **C.     Rule 12(b)(6)**

The Court will not evaluate SMIC's Rule 12(b)(6) arguments until it has resolved the issue of personal jurisdiction. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** SMSC's motion without prejudice. The Court **RESERVES JUDGMENT** on SMIC's motion and **DIRECTS** plaintiff and SMIC to pursue jurisdictional discovery. The discovery period shall not exceed forty-five (45) days and the scope of discovery is limited to: (1) the observance of corporate formalities between SMIC and SMIC USA and SMIC's alleged control over SMIC USA's internal affairs and daily operations; (2) if defendant Wang was acting on behalf of SMIC in the transaction at issue; (3) where defendant Wang was located when he allegedly solicited plaintiff's business and negotiated the contract at issue on SMIC's behalf; (4) how defendant Wang solicited plaintiff's business in California; and (5) if, under the terms of the contract, SMIC was to deliver the goods at issue to California or otherwise "perform" in California.

Seven (7) days after the forty-five (45) day discovery period closes, plaintiff shall file a memorandum not to exceed ten (10) pages, setting forth facts demonstrating the availability of personal jurisdiction. SMIC may respond seven (7) days thereafter, also by filing a memorandum not to exceed ten (10) pages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:23-cv-08934-CAS-AGRx | Date | February 28, 2025 |
|----------|------------------------|------|-------------------|
| Title | High Sharp Electronic Limited v. Semiconductor Manufacturing South China Corporation et al | | |

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |